**RIVERSIDE REALTY COMPANY, INC.,**
Plaintiff,

v.

**The CITY OF NEW ORLEANS,**
Defendant.

Civ. A. No. 5996.

United States District Court
E. D. Louisiana,
New Orleans Division.
July 31, 1962.

Deutsch, Kerrigan & Stiles, Gerald J. Gallinghouse, New Orleans, La., for plaintiff.

Alvin J. Liska, City Atty., Beuker F. Amann, Asst. City Atty., for defendant.

AINSWORTH, District Judge.

This is a suit by a Delaware corporation against the City of New Orleans for damages and attorneys fees for the alleged wrongful taking for public street purposes property claimed to be owned by plaintiff in that municipality.

The City defended on the ground that the property involved was already in public use at the time it was alleged to have been wrongfully taken for street purposes; that a tacit dedication of the property for public use had already been made by the property owner and had continued for many years.

The land forms the southern portion of Square 1608, measuring 43′9″4‴ x 218′8″ on Florida Avenue and the southern portion of Square 1609, measuring 43′9″4‴ x 171′7″6‴.

■ At the outset we have been unable to find any proof by plaintiff that it is the record owner of a portion of its claim in Square 1609, measuring 43′9″4‴ x 120′. This property was purchased from one Cortinas (Exhibits P–13 and act of sale of Cortinas to Riverside, dated April 28, 1955) and does not include that portion in the involved street or roadway of Florida Avenue. Accordingly we hold that plaintiff has no title to this portion of property for which it claims damages.

On July 18, 1955 the City entered into written contracts with Boh Bros. Construction Co. for paving and subsurfacing drainage in the subject area. Plaintiff claims that its buildings known as Delta Theater and Villere Super Market No. 2, fronting on Florida Avenue, were damaged by the construction company, and accordingly claim is made herein for the alleged amount of said damage, the sum of $10,532.26.

A check of the official records of the City of New Orleans Building Permit Division discloses, however, that permits were issued to plaintiff by the City at the time of the alleged damage by the construction company for $300.00 on January 5, 1955 and $250 on January 19, 1956. The City maintains that there was no damage, but if there was it was minimal and not exceeding the value of the construction permits referred to, and in no event can it be asserted against the City because the damage, if any, was done by the construction company, an independent contractor.

The construction company was not made a party to these proceedings.

■ The law of Louisiana is clear that plaintiff is not entitled to damages against the City because of the City's

governmental immunity in the performance of a purely governmental function such as the paving of a city street.[1]

It is also true under the law of Louisiana that the owner of property may impliedly dedicate it to public use under the doctrine of implied dedication, which is well recognized in Louisiana and operates by way of estoppel in pais by acceptance and use on the part of the public with the consent of the owner.[2]

The evidence of record conclusively shows that the subject property was long used by the public as a public street with the knowledge and consent of plaintiff and its predecessors in title. The alleged taking of property here occurred in 1955 and 1956. As early as 1946, however, an aerial photograph taken in that year (D-Exhibit 4) clearly shows that the property in the southern portion of Squares 1608 and 1609 was being used as a public street; that sidewalks had been laid along the southernmost line of the property immediately preceding the portion being used as a street. The aerial photograph shows the street and the sidewalks.

It was to the manifest interest of plaintiff and its predecessors in title to permit the use of a portion of the property for a roadway. Having built a large F.H.A. development of more than 550 units in the surrounding area and having set up a super market area on Florida Avenue, the 16' roadway heretofore publicly dedicated to the City was obviously inadequate, and persons desiring access to the housing development and the super market area would have been unable conveniently to obtain it had not plaintiff and its predecessors voluntarily acceded and made available for public use the property involved in the present case.

The evidence also shows that a shuttle bus service was operated by Louis Kelly, who testified on behalf of the City that he traversed Florida Avenue over the subject property many times daily in his bus service beginning in 1945 and ceasing in 1958.

D-Exhibit 9 is a handbill of Kelly's bus service dated December 7, 1947. D-Exhibit 8 is the written permission of the City to continue to operate, dated January 25, 1951. D-Exhibit 7 is the City's file on the Kelly bus operation and bears the early date of February, 1946. Kelly's testimony is quite definite on the subject leaving the court with no doubt that he operated over the street which actually traversed the subject property for which damage is claimed in this suit. The photographs (D-Exhibit 12) taken before the paving of the street in 1955 and 1956 also graphically show that the public was using the area for a city street. The City's exhibit (D-Exhibit 11) dated December 29, 1953 is a notation from one of its street inspectors of certain needed repairs to the street on Florida Avenue over the subject property. The testimony of the City's representatives is likewise quite clear that the City has been maintaining the street for many years, at least since 1948, and that the president of plaintiff corporation stated to the bus operator, Kelly, that it was the City's obligation to take care of the maintenance of the street.

The City paved the roadway on Florida Avenue in 1955 and 1956 without cost to the adjoining landowner, and plaintiff thereby obtained a very valuable improvement to its property with no expense to it. It now seeks a windfall.

We find the claim totally without merit or equity. For at least seven years prior to the paving of the street it had been used as a public roadway with the knowledge, consent and approval and to the advantage of plaintiff and the predeces-

1. Beck v. Boh Bros. Construction Co., 72 So.2d 765, La.Ct.App., Orleans (1954). See also the Louisiana Supreme Court decision in Angelle v. State, 212 La. 1069, 34 So.2d 321, 2 A.L.R.2d 666 (1948); Lutenbacher v. Mitchell-Borne Const. Co., 136 La. 805, 67 So. 888, 19 A.L.R. 206.

2. B. F. Trappey's Sons v. City of New Iberia, 225 La. 466, 73 So.2d 423 (1954); City of Shreveport v. Velotta, 131 So. 2d 90, La.Ct.App., 2d Cir. (1961).

sors in title. The action of the City in paving the street in 1955 and 1956 was likewise to the great advantage of plaintiff, the adjoining property owner, ·and particularly to the super market area which it leases to numerous tenants. We are well satisfied with the testimony of the bus operator, the City inspectors, and the representatives from the City Engineers Office and the Public Utilities Department. The witnesses from the electric public utility company, and especially the photographs in evidence, show there is no question whatsoever that the subject property has long since been used for public purposes with the acquiescence and to the advantage and profit of plaintiff and its predecessors in title.

Accordingly, suit of plaintiff must fall, and it is dismissed with costs in favor of defendant, City of New Orleans.