249 So.2d 304 (1971)
Charles E. SCHWING et al., Plaintiffs-Appellees,
v.
CITY OF BATON ROUGE et al., Defendants-Appellants.
No. 8420.
Court of Appeal of Louisiana, First Circuit.
May 14, 1971.
Rehearing Denied June 30, 1971.
*306 Joseph F. Keogh, Parish Atty., John Caskey, Asst. Parish Atty., Baton Rouge, for defendants-appellants.
R. Gordon Kean, Jr., and John V. Parker, of Sanders, Miller, Downing & Kean, Carlos G. Spaht of Kantrow, Spaht, Weaver & Walter, Baton Rouge, for plaintiffs-appellees.
Before LOTTINGER, SARTAIN and TUCKER, JJ.
TUCKER, Judge.
This is a mandamus proceeding brought by the plaintiffs, Charles E. Schwing, E. B. Schwing, Jr., J. P. Owen, Jr., and James R. Smith, to compel the defendants, the City of Baton Rouge and the Parish of East Baton Rouge, hereinafter referred to as City-Parish, their Planning Commission and the members thereof, to grant approval of a final plat and re-subdivision of certain property owned by the plaintiffs, and to compel the Building Official or Inspector of the said city and parish to grant a building permit for a building to be erected within the right of way of the proposed extension of South Choctaw Drive on the same property, which is described as follows:
Thirty-four (34) acres of commercial property identified as Tract "A" of the C. C. Bird property in Section 73, Township 7 South, Range 1 East in the Parish of East Baton Rouge; more particularly described as being bounded on the North by the right of way of the Illinois Central Railroad, on the East by Wooddale Boulevard, on the West by Lobdell Avenue, and on the South by a drainage servitude and by Tract "B" of the C. C. Bird property.
The above described property was bought by plaintiffs on September 29, 1967. At that time a master Street Plan for the City-Parish had previously been adopted and approved with proper public hearings and all due procedures as required by statute, but it had not been recorded in the Clerk of Court's office. This Master Plan showed by a line an 80' right of way for the extension of South Choctaw Road. There are no immediate plans for the construction of this street, and in fact a traffic survey made by Wilbur Smith and Assoc. indicates it probably will not be needed to handle the traffic of the City-Parish before 1985.
In 1969 plaintiffs undertook preliminary action toward the resubdivision of their property in order to sell it. Upon presentation of a preliminary plat the plaintiffs were informed by the Planning Commission that they must install a sanitary sewer collection line across the entire property in a drainage servitude reserved for it, which allegedly cost plaintiffs in excess of $19,000.00. After compliance with this request plaintiffs again submitted a plat, entitled "Final", to the Planning Commission for approval, but this commission refused to approve the plat, informing the plaintiffs that the northern portion of the tract lay across the proposed extension of South Choctaw Drive from Lobdell Avenue to Wooddale Boulevard, as set forth in the Master Street Plan, which required a dedication of an 80' right of way. The Planning Commission later reduced the 80" requirement for the right of way to 50', but the plaintiffs refused to make this dedication. Subsequently the plaintiffs requested the City and Parish Council to delete from the Master Street Plan this proposed extension of South Choctaw Drive between Lobdell Avenue and Wooddale Boulevard. The Council refused to make this deletion from the subject plan. Plaintiffs then offered to sell the strip of land to the City and Parish at the fair market value, and in the event of failure to agree on an acceptable sum to make use of arbitration, *307 but the City and Parish refused to negotiate.
Following this rebuff the plaintiffs proposed to erect a building on the northeastern portion of the tract, lying within the proposed right of way of South Choctaw Drive, and requested a building permit for same. The building inspector for the City-Parish refused to issue the permit, however, on the basis and for the reason that said permit, if granted, would violate the building setback requirements of Title 7, Chapter 3, Section 4.410(2) of the Zoning Ordinances of the City of Baton Rouge. The plaintiffs filed suit immediately against the defendants.
The plaintiffs contended that, inasmuch as the Master Street Plan was not filed in the Clerk of Court's Office, as required by R.S. 33:108, 33:109, until March 18, 1970, it could have no "legal status" until its filing, and, therefore, could not serve as authority for the Planning Commission's refusal to approve their "final" plat. They argued alternatively that the City's requirement that the strip of land be dedicated would amount to a confiscation of private property for public use contrary to the provisions of the V and XIV amendments to the Constitution of the United States and Section 1 of Article 2 of the Louisiana Constitution of 1921.
The City-Parish contended that the legislature had conferred upon it through LSA-R.S. 33:101-33.119 the power to sub-divide land, and that the said governing bodies had exercised the powers reasonably. The City-Parish also filed dilatory exceptions of Prematurity, based on the proposition that the plaintiffs had not exhausted all of their administrative remedies in advance of filing suit, Unauthorized Use of Summary Procedure on the ground that mandamus would not lie where legislative discretion was reposed in the council, and such discretion had not been exercised in an arbitrary, capricious and unreasonable manner, and a peremptory exception of No Cause or Right of Action, all on behalf of the Planning Commission and the building inspector. After arguments and hearing testimony thereon the trial court overruled all exceptions and proceeded to hear the merits of the case on the rule to show cause, rendering judgment ordering a writ of mandamus to issue to the Planning Commission to the City of Baton Rouge and the Parish of East Baton Rouge directing it to carry out its ministerial duty of approving the last plat submitted for subdivision of the subject tract, and, also, against the building inspector ordering him to issue a building permit to the plaintiffs for the erection of the building within the northeastern portion of the property, as prayed for.
From this judgment the defendants appeal, specifying the following errors:
I. The Trial Court erred in finding that the dedication of right of way as required by the Subdivision Regulations would amount to an unconstitutional taking of property.
II. The Trial Court erred in not basing its judgment on R.S. 33:101-119 and on the local subdivision ordinances and regulations based on these statutes.
III. The Trial Court erred in issuing writs of mandamus, which constituted an improper use of summary procedure where both legislative and administrative discretion on the part of public officials was involved.
IV. The Trial Court erred in basing its judgment on a ruling that the road would not be required until 1985 when, in fact, the testimony concerning 1985 was based on the traffic count as set forth in the Wilbur Smith Transportation Study, and that immediate construction of the road could be waived because of the traffic count as determined by the Study.
V. In the alternative, the Trial Court erred in directing the Building Official to issue a permit, which permit is in violation of the setback requirements *308 of the Comprehensive Zoning Ordinances of the City of Baton Rouge, more specifically Title 7, Section 4.410 (5), of the City Code of Baton Rouge.
The primary issue of this case is res nova in the State of Louisiana. This issue is whether or not the City of Baton Rouge and the Parish of East Baton Rouge, in requiring that plaintiffs dedicate a portion of their property for a public street prior to final approval of a plat for the subdivision of the whole area involved, is engaging in a constitutional exercise of its police power, and, necessarily corollary thereto, whether or not such a requirement amounts to an unconstitutional taking of private property for public use without just compensation.
This court believes and so holds that governing bodies such as the defendant City-Parish have the legal and constitutional right, with the limitations hereinafter noted, to adopt Master Plans in the interest of public health, morals, safety and adequate traffic patterns, envisioning the progress and continued growth of the communities and to include of necessity the locations, types and dimensions of streets, roadways, and thoroughfares. This power and authority has reference to the prospective and future needs for the orderly development and progress of a given area as well as the current and extant necessities. Especially is this true when municipalities and similar governing units are empowered to take such action by the state, as is the case here under the provisions of LSA-R.S. 33:101-33:119. In support of these statements of law see Nichols, The Law of Eminent Domain (1950), Vol. 1, Sec. 1.42 (1), pp. 90-95, and the cases cited therein. See also the leading case on the subject, Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 387, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016 (1926). Accord: Newton v. American Sec. Co., 201 Ark. 943, 948, 148 S.W.2d 311, 315 (1941); Ayres v. City Council of City of Los Angeles, 34 Cal.2d 31, 207 P.2d 1, 7-8, 11 A.L.R.2d 503 (1949); Krieger v. Planning Commission of Howard Co., 224 Md. 320, 167 A.2d 885, 886 (1961); Brazer v. Borough of Mountainside, 102 N.J.Super. 497, 246 A.2d 170, 175 (1968). Here the plaintiffs concededly do not attempt to show arbitrary, capricious and unreasonable action on the part of the Planning Commission in exercising its constitutional police power of recommending the adoption by the Council of a Master Street Plan after a public hearing in which a major artery of traffic is proposed to be extended and connected on the basis of a traffic survey and recommendation made by a reputable firm, Wilbur Smith and Associates.
It is equally well established, as a corollary to the right of a governing body to require street dedications under reasonable circumstances as a valid exercise of its Police Power, that it has no constitutional right to take the property of private citizens for public use without just compensation. (The aforementioned authorities cited above are in agreement on this point, also.) In Louisiana the only instance where the state is authorized to take private property for public use without just compensation is under the riparian servitude set forth in C.C. Art. 665. Even this taking has been limited in relatively recent times in favor of the landowner by the constitutional requirement of 1921 that the levee board pay the owner of riparian lands the assessed value for the preceding year of his property which is taken or used. (La.Const., Art. 16, Sec. 6) In the absence of any other legislation on the subject, and under the principle of "inclusio unius est exclusio alterius," it must be held that it was the intention of the drafters of the Civil Code and of the Constitution of 1921 to regard the riparian servitude as a special case, with all other servitudes, such as those for streets, being instances in which the owner must be justly compensated for his loss.
The plaintiffs cogently contend that they have complied with all reasonable and proper requirements of the City-Parish in order to obtain official approval of the plat *309 of their subdivision, and should the position of the City-Parish be upheld and they compelled to note on their plat a 50' right of way for the extension of South Choctaw Drive across the extreme northern end of their property in order to secure approval, they would be placed in the untenable position of having to dedicate and effectively donate their property for public use and purposes without being able in advance or in the future to obtain fair value for same, or, in the alternative, they would be required to forego the proposed re-subdivision with consequent loss of profits and revenue which such a re-subdivision would stimulate in the real estate market.
The evidence overwhelmingly establishes that the future need for the extension of South Choctaw Drive, estimated by the traffic surveys for occurrence about 1985, would be caused by traffic flow and demands of the entire City-Parish area, rather than by the traffic generated in the area sought to be re-subdivided. The benefits to be derived from an extension of South Choctaw Drive would redound, therefore, primarily to the general public and not to the owners of the proposed subdivision or their successors in title. The City-Parish does not seriously contest this point, relying on the claim that under its police power the strip of land in question is needed for an orderly, systematic and proper growth and development of a growing metropolis. On the other hand, the plaintiffs say that the extension of South Choctaw Drive at some unforeseen future date would effectively interrupt and operate as a barrier to the owners of the subdivision properties in having access to the Illinois Central Railroad (the old Baton Rouge, Hammond and Eastern Railroad). The documentary evidence offered clearly shows this to be the case. On both the east and west sides of the subject tract are major streets which adequately serve its vehicular traffic needs.
Under the law and jurisprudence of this state, if the plaintiffs acquiesce in the demands of the City-Parish and after approval by City-Parish they file and record the plat of the re-subdivision with the right of way for South Choctaw Drive noted thereon, they will have dedicated the fifty feet to the public and no means exist by which their right to just compensation for the strip of land could be preserved. In substantial support of this principle see City of Houma v. Cunningham, 225 So.2d 613 (La.App., 3d Cir., 1969) and numerous cases of similar import. In the cited case the landowner was refused damages or compensation when the court found an implied dedication, whereas we are dealing here with a statutory dedication under the provisions of LSA-R.S. 33:5051.
The City-Parish has abundantly indicated it has no desire or intention of purchasing the strip for the proposed right of way now or in the near future. In The Law of Eminent Domain by Nichols above cited on page 127, Col. 1, Sec. 142.9 appears the following: "As the plotting of a street under such a statute substantially amounts to depriving the owner of the use of the land within the limits of the projected street for any but temporary use, it is generally held that such statutes are unconstitutional unless the owner is given compensation for his loss."
The plaintiffs do not quarrel with the well recognized principle of law that a court will not substitute its judgment for that of boards lawfully appointed and charged with the duty to ascertain certain facts, and such a board's judgment is controlling in a proceeding for review thereof, unless there is evidence that it was arbitrarily abused. However, in this case the thrust of plaintiffs' position is directed at the design and intent of City-Parish to obtain this 50' strip without paying the fair value of same.
This court has determined that City-Parish is imbued and endowed with the authority to adopt Master Street Plans, including designation of land for present and future streets, and extensions of presently existing roadways such as South *310 Choctaw Drive at some future time, but where the City-Parish refuses to approve a re-subdivision unless the subdivider includes within the map or plan a dedication of an area sufficient to accommodate the extension of a street to the primary benefit of the public at large, it falls afoul of the constitutional prohibition against the taking of private property for public use and purposes without fair value being paid.
In light of the foregoing analysis and conclusions we need not discuss the issue raised by the plaintiffs with respect to whether the subject Master Street Plan was controlling on plaintiffs, and timely filed since it was not filed and recorded until early 1970, and plaintiffs acquired their property in 1967, and had commenced undertaking re-subdivision in 1969.
From the above and foregoing reasoning it can be gleaned that legislative discretion in the adoption, alteration and amendments of Master Plans is not actually in controversy here. We think that the defendants are advancing this principle which abhors interference of a Court so long as the exercise of this discretion is not arbitrary in order to escape the fact that we are here confronted not with legislative discretion, but with the failure of City-Parish to perform its ministerial duties in approving the re-subdivision and issuing the application for the building permit. Indeed, numerous of the authorities cited above hold that zoning regulations cannot be used under the guise of a proper exercise of the police power in order to defeat the constitutional requirement for just compensation. Inasmuch as City-Parish has no present plans for the extension of South Choctaw Drive, it appears to be an unreasonable exercise of its valid police power to prevent plaintiffs from building on the proposed right of way or within the "Setback" regulations of the Zoning Ordinance.
The defendants plead and argue that the provision of C.C.P. Art. 3863 do not countenance the summary procedure of mandamus against public officers for performing a discretionary duty. However, conversely the said article does warrant summary procedure to require a public official to perform a ministerial duty. Having held that the exercise of ministerial duties is the matter of prime importance in this litigation, mandamus lies as a proper remedy. See Bussie et al. v. Long, 236 So.2d 68 (La.App., 1st Cir. 1970); writ issued 256 La. 817, 239 So.2d 344 (La. Sup.Ct.)
For the above and foregoing reasons the judgment of the lower court is affirmed at defendant-appellants' costs or such costs as may be required of them by law.
Affirmed.